IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TAMMY M.,

                          Plaintiff,

           v.                                        Civil Action No.
                                                     6:21-CV-1288 (DEP)


COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                          Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

DENNIS KENNY LAW                          JOSEPHINE GOTTESMAN, ESQ.
288 North Plank Road
Newburgh, NY 12550

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    CHRISTOPHER POTTER, ESQ.
6401 Security Boulevard                   FERGUS J. KAISER, ESQ.
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

_____

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.   BACKGROUND

Plaintiff was born in August of 1962, and is currently sixty years of age.  She was fifty-four years old in May 2017, the date upon which she allegedly became disabled, and fifty-six years old as of December 12, 2018, when she filed her application for benefits.  Plaintiff stands five feet in height, and weighed between approximately ninety and one hundred and five pounds during the relevant time period.  At the time of the first administrative hearing in this matter, held in 2019, plaintiff reported that she was living in a house with her fiancé and his four children, but by the second hearing, she was living in an apartment with her sister in Utica, New York.

In terms of education, plaintiff reports that she attended school until

the eleventh grade, but did not graduate and has not obtained her GED. She worked in the past primarily as a cleaner of both commercial facilities and houses, but also engaged in paid caregiving for children during the relevant time period.

Physically, plaintiff alleges that she suffers from pain and other symptoms related to diverticulitis and other bowel issues, back pain, and symptoms related to artery stenosis and kidney disease. She has received treatment for her various physical impairments with St. Elizabeth Medical Center ("SEMC"), Faxton-St. Luke's Healthcare, the Mohawk Valley Health System including Mohawk Valley Nephrology, Bassett Healthcare Network, and SEMC Family Medicine Center. Plaintiff additionally alleges that she suffers from depression and anxiety, particularly following the end of her relationship with her fiancé in 2020, for which she has received treatment from SEMC Family Health Center.

Plaintiff alleged at the administrative hearing in December of 2019 that she suffers from dizziness and nausea related to poor blood flow, liver and kidney issues, and diverticulitis. She does not drive and has difficulty bending. Plaintiff experiences nausea and lost a significant amount of weight before her diverticulitis surgery. Prior to that surgery she did not leave the house unless she had a doctor's appointment because of her

nausea, diarrhea and vomiting.  However, her diverticulitis is not currently an issue.  She reports that she has no difficulty sitting, but that she cannot lift anything heavy.  Plaintiff spends most of her day sitting on the couch using her cellphone or watching television.  She makes some of her meals but does not do much cleaning and she does not shop or do laundry.

At the administrative hearing in March 2021, plaintiff reported that she experiences high blood pressure levels that cause her to become dizzy if she engages in lifting, bending, or anything strenuous.  She has difficulty walking and getting comfortable when sitting because of aching.  Plaintiff can walk on a flat surface, but not on stairs or inclined surfaces, and the ability to do so has not improved since the vascular procedure was performed on her leg.  She also continues to experience nausea in the mornings and diarrhea.  Plaintiff testified regarding many of the same daily activities as she had at the previous hearing, although she reported a new ability to go shopping.

II.  PROCEDURAL HISTORY

A.  Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on December 12, 2018.  In support of her applications, she claimed to be disabled due to an intestinal infection,

4

acute diverticulitis, and left foot drop.

A hearing was conducted on December 20, 2019, by Administrative Law Judge ("ALJ") Jeremy G. Eldred to address plaintiff's applications for benefits.  ALJ Eldred issued an unfavorable decision on January 28, 2020. On November 16, 2020, the Social Security Appeals Council ("Appeals Council") reviewed that decision and found that remand was warranted to give further consideration to (1) whether plaintiff's self-employment earnings equate to substantial gainful activity, (2) whether claimant has past relevant work and, if so, is capable of performing it notwithstanding her impairments, and (3) whether testimony from a vocational expert ("VE") regarding transferrable skills should have been elicited.

ALJ Eldred held a second administrative hearing on March 1, 2021. On March 19, 2021, he issued a second decision, again finding that plaintiff is not disabled.  That opinion became a final determination of the agency on October 26, 2021, when the Appeals Council denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Eldred applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff has not engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Eldred found that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including degenerative changes of the lumbosacral spine, a left foot drop, hypertension, hyperlipidemia, aortic atherosclerosis, mesenteric artery stenosis, peripheral vascular disease, bilateral carotid artery stenosis, renal artery stenosis, diverticulitis status-post partial left colectomy, chronic kidney disease, atrophy of the right kidney, and type 2 diabetes mellitus.  He further found that plaintiff's alleged mental impairments do not constitute severe impairments.

At step three, ALJ Eldred examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.04, 4.04, 4.11, 5.00, 6.00, and 9.00.

ALJ Eldred next surveyed the available record evidence and concluded that, during the relevant time period, plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b).

ALJ Eldred found at step four that, with the above RFC, plaintiff is

6

able to perform her past relevant work as a cleaner, which the VE testified is defined by the job listed in Dictionary of Occupational Titles ("DOT") section 709.687-010.  That work was identified as being that which plaintiff performed for AAA Moving and Storage between 2002 and 2009, with earnings in 2007 being above the level of substantial gainful activity. Based upon these findings, ALJ Eldred concluded that plaintiff was not disabled during the relevant period.

C.   This Action

Plaintiff commenced this action on December 3, 2021.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ (1) failed to consider whether her self-employment earnings meet the requirement of substantial gainful activity as directed by the Appeals Council, (2) failed to consider whether she can perform her past relevant work, and (3) committed errors in formulating the RFC because it does not properly account for all of the evidence and is based on stale opinions, and because the ALJ failed to seek a medical source statement from any of her treating physicians, particularly regarding the effect her vascular

---

[2]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

impairments would have on her work-related functioning.  Dkt. No. 9.

Oral argument was conducted in this matter, by telephone, on March 22, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.

8

*Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts his or

her physical or mental ability to perform basic work activities.  *Id.* §§

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an

impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d),
416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant
is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149
(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.
1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

     If the claimant is not presumptively disabled, step four requires an
assessment of whether the claimant's RFC precludes the performance of
his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).
If it is determined that it does, then as a final matter, the agency must
examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),
416.920(g).

     The burden of showing that the claimant cannot perform past work
lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);
*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it
becomes incumbent on the agency to prove that the claimant is capable of
performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether
that burden has been met, the ALJ should consider the claimant's RFC,
age, education, past work experience, and transferability of skills.  *Ferraris*,
728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.   <u>Analysis</u>

1.    <u>The ALJ's Consideration of Past Relevant Work</u>

Plaintiff initially makes two arguments related to the ALJ's step four finding, asserting that he (1) failed to consider whether her self-employment earnings rose to the level of substantial gainful activity as directed by the Appeals Council, and (2) failed to adequately consider whether she can perform any of her past relevant work.  Dkt. No. 9, at 18-22.

Regarding plaintiff's self-employment earnings, although the Appeals Council did indeed direct the ALJ to consider whether those earnings rose to the level of substantial gainful activity, nonetheless, I find that such a discussion was unnecessary in the most recent ALJ decision because the ALJ did not find that plaintiff's self-employment activity qualifies as past relevant work and did not cite that activity to support his step four finding.[3] Indeed, the only job that the ALJ relied upon for step four purposes as past relevant work in the most recent decision is that which was performed at AAA Moving and Storage.  Administrative Transcript ("AT") at 31.[4]  This is contrasted with the previous ALJ decision, in which ALJ Eldred both found

---

[3]    In any event, the self-employment activity from 2012 to 2016 is no longer relevant based upon the fact that, after the date of the first decision, the plaintiff amended her alleged onset date to May 22, 2017, meaning that examination of whether she engaged in substantial gainful activity prior to that time for the purposes of step one is no longer relevant here.

[4]    The administrative transcript is found at Dkt. No. 8, and will be referred to throughout this decision as "AT __."

the self-employment work in 2015 and 2016 to constitute substantial gainful activity and relied upon that work to support his step four finding.  AT 160-61.  Because, on remand, the ALJ relied on a different job that even plaintiff appears to admit was performed at the level of substantial gainful activity in 2007, there was no need for the ALJ to explicitly discuss whether the self-employment work activity was or was not past relevant work for purposes of step four.  His reliance on that other job addresses the error that the Appeals Council previously identified in the first decision.  Accordingly, I find that the ALJ did not fail to comply with remand order in any material respect.

As to plaintiff's second argument, it is in part a reiteration of the argument that was already discussed above and in part an assertion that the ALJ should have found plaintiff to be limited to sedentary work. Because that second assertion will be discussed in greater detail below, there is no need to do so related to the ALJ's step four findings.

Although plaintiff did not raise any such argument, I do note that the VE who testified at the 2019 administrative hearing identified the job performed by plaintiff at AAA Moving and Storage as being a composite job based on plaintiff's testimony that she performed some office work, such as answering phones when the office staff employees were on break, in

addition to cleaning, although plaintiff testified that the job primarily involved cleaning.  AT 72, 392.  The VE who testified at the second administrative hearing did not address whether that job was a composite job, although I note that plaintiff did not provide any testimony during that hearing to indicate she performed office work along with cleaning at that job.  AT 93.

Social Security Ruling ("SSR") 82-61 provides that "composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT."  SSR 82-61.  The agency's internal procedure manual, the Programs Operations Manual ("POMS"), further directs that "[w]hen comparing the claimant's RFC to a composite job as the claimant performed it, [an ALJ should] find the claimant capable of performing the composite job only if he or she can perform all parts of the job."  POMS DI 25005.020B.  However, in finding plaintiff can perform her past relevant work as a cleaner based on the AAA Moving and Storage job, the ALJ did not appear to address the testimony from the first VE to the effect that the position could be considered a composite job, nor did he assess whether plaintiff remains capable of performing both aspects of that job.

Despite this omission, I find that any error is harmless.  The VE from the first hearing, who had identified that work as a composite job, defined both parts of the job, stating that it is comprised of work described by DOT

381.687-014, commercial cleaner, which has a specific vocational preparation ("SVP") of two and is listed at the heavy exertional level, but performed by plaintiff as light, and DOT 209.562-010, routine office clerk, which has an SVP of three and is performed at the light level.  AT 72. Because both parts of the composite job were identified and the VE testified that they could both be performed by someone who could perform light work, the ALJ's failure to consider the composite nature of the job is harmless error that has not affected the ultimate outcome in this case.  I also note, that, although the second VE, and by extension the ALJ, relied on DOT 709.687-010 as the relevant cleaner title to describe plaintiff's past work, rather than the commercial cleaner title indicated by the first VE, such fact does not change the outcome here because the vocational testimony indicates that plaintiff could perform her past relevant work regardless of which VE's testimony the ALJ relied upon regarding the nature of that job.

Based on all of the above, I find the ALJ's step four finding that plaintiff can perform her past relevant work as a cleaner to be supported by substantial evidence.

### 2.    The ALJ's Assessment of Plaintiff's RFC

Plaintiff also argues that the ALJ's RFC assessment determining that plaintiff retains the ability to perform light work is not supported by

substantial evidence because (1) the opinions that the ALJ relied upon are stale and do not reflect the impact of later-developed conditions, including plaintiff's vascular impairments that the ALJ found to be severe, and (2) the record does not contain an opinion from a treating physician.  Dkt. No. 9, at 21-27.

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the

supportability[5] and consistency[6] of those opinions.  20 C.F.R. §

416.920c(b).  The ALJ also may – but is not required to – explain how he or

she considered the other relevant enumerated factors related to the

source's relationship with the claimant, including the length of any

treatment relationship, the frequency of examinations by the source and the

purpose and extent of the treatment relationship, whether the source had

an examining relationship with the claimant, whether the source specializes

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

On March 1, 2019, Dr. C. Krist opined as to plaintiff's Title XVI claim[7]

that she can perform a range of light work, meaning she can lift 20 pounds

occasionally and ten pounds frequently, stand or walk for six hours in an

---

[5]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[6]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

[7]     As to plaintiff's Title II claim, Dr. Krist found that there was insufficient evidence available to enable the making of a determination with regard to the relevant period.  AT 104.

eight-hour workday, and sit for six hours in an eight-hour workday.  AT at
116-17.  Dr. V. Baronos affirmed that finding on April 4, 2019.  AT 129,
141-42.  The ALJ found those opinions to be persuasive because they are
supported by a detailed narrative rationale consisting of citations to
supporting medical evidence from the record, and are consistent with both
the opinion of consultative examiner Dr. Rita Figueroa, and the evidence in
the record as a whole, including the evidence that the ALJ discussed in the
decision related to plaintiff's own subjective complaints.  AT 29-30.

    After conducting a physical examination, Dr. Figueroa opined on
February 13, 2019, that plaintiff would have a moderate limitation in her
abilities to engage in prolonged walking and standing, walking on uneven
ground or up hills, kneeling, squatting, crawling, bending, lifting, and
carrying, as well as that she should avoid being on ladders and unprotected
heights.  AT 668.  In her examination report, Dr. Figueroa recorded that
plaintiff had an abnormal limping gait in that she was walking on her right
heel, she was unable to walk on her toes, her squat was fifty-percent of
normal, she had decreased range of motion in her cervical spine, lumbar
spine, left leg and knees, and 4/5 strength in her left leg distally.  AT 666-
68.  The ALJ found Dr. Figueroa's opinion that plaintiff remains able to
perform what is essentially a range of light work to be persuasive,

discerning it to be supported by detailed findings from her examination, consistent with the opinions from Dr. Krist and Dr. Baronos, and consistent with the record as a whole, including plaintiff's subjective complaints.  AT 29-30.  The ALJ did, however, find that the additional non-exertional limitations identified by Dr. Figueroa are not persuasive, because they are not supported by the generally benign findings on her physical examination, and not consistent with the other evidence in the record as a whole.  AT 30.

As an initial matter, I note that plaintiff has not directly challenged the reasons given by the ALJ for relying on those opinions, but rather has focused on whether it was proper to rely on them due to their alleged staleness.  Although those opinions were indeed rendered fairly early in the relevant period, and before plaintiff developed any of the vascular symptoms for which she later received treatment in 2020, I find that, under the circumstances of this case, those opinions are not stale.  A medical opinion can become stale if there is a deterioration in the claimant's condition or functioning after the time that the relevant opinion was rendered.  *Maxwell H. v. Comm'r of Soc. Sec.*, 19-CV-0148, 2020 WL 1187610, at *5 (N.D.N.Y. Mar. 12, 2020) (Kahn, J.).  However, the mere fact that an opinion was rendered a significant time prior to the ALJ's decision is not alone dispositive of staleness; rather, the pivotal question is

whether there was a material change in the claimant's condition that would impact the validity of the opinion. *Maxwell H*, 2020 WL 1187610, at *5; *see also Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (finding that opinion was not stale because the additional evidence from after that opinion did not raise doubts as to the opinion's reliability). "[A] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Ruth M. v. Saul*, 18-CV-1006, 2020 WL 819323, at *8 (N.D.N.Y. Feb. 19, 2020) (Hummel, M.J.).

Notably, the primary impairment for which plaintiff sought treatment from the alleged onset date through approximately July of 2019 was her diverticulitis. The state agency sources in particular had the opportunity to assess a significant body of the evidence related to that condition. Plaintiff underwent a bowel resection surgery on March of 2019 to treat that condition and, although she continued to report some lingering bowel symptoms and abdominal pain, multiple treating sources indicated that this was due in part to presumed lactose intolerance, one source noting that plaintiff "has fairly poor insight into these things" and was continuing to consume dairy products. AT 787, 795-98, 1000-01. Following this period, a treatment provider noted in May of 2020 that plaintiff was eating and drinking well and was overall doing well following a high-fiber diet. AT 933.

20

Indeed, treatment notes from after July of 2019 do not appear to substantiate ongoing significant symptoms related to her diverticulitis. As a result, the subsequent evidence related to that condition does not suggest that the opinions in this case are stale. I note, moreover, that imaging of the plaintiff's lumbar spine from after the date of Dr. Baronos' opinion showed only mild degenerative changes, and plaintiff did not often report significant symptoms related to her back. AT 768-69, 940.

The record evidence does substantiate that, subsequent to the opinions in this case, plaintiff developed more significant issues with her blood pressure being uncontrolled and vascular symptoms in her legs that caused pain in her legs when walking. The first reported instances of these developments appear around June of 2020, when she reported headaches in the morning related to high blood pressure, although it was noted at that time that she had been out of her prescribed lisinopril. AT 942. Issues with her blood pressure seem to have stabilized by July and August of 2020 as she continued to take her medication, although she reported that her left hip pain worsened with walking, and was assessed with stenosis in multiple arteries. AT 970.

Plaintiff was initially scheduled for an angiogram in September of 2020. That test was cancelled, however, because the provider was unable

21

to contact her, which she later reported was because she had been moving and did not have a telephone.  AT 1436.  Later in September of 2020, plaintiff was observed to have elevated blood pressure on exam, but admitted she had woken up late and taken her medication not long before the appointment.  AT 986.  A computed tomography ("CT") angiogram performed in October of 2020 showed stenosis in various of plaintiff's arteries and she reported experiencing intermittent claudication, or pain, in her left thigh, which was exacerbated by activity and relieved by sitting and resting.  AT 1367.  Plaintiff subsequently underwent a mesenteric angiogram and lower left extremity arteriogram to address that stenosis in early December of 2020.  AT 1181.  Following her surgery, plaintiff reported initially that she still had some mild abdominal distention but that there was improvement in her lower extremity symptoms, and a few days later reported that her abdominal distention and bloating had resolved.  AT 1326, 1353.  Further, at the hearing in March of 2021, plaintiff reported that, since the surgery, she had problems related to walking because of her back and feeling dizzy related to her blood pressure, although she did not report that she continued to experience thigh pain following the surgery. AT 85-86, 90-91.

When discussing plaintiff's vascular impairments, the ALJ

acknowledged that plaintiff has experienced symptoms and undergone multiple procedures to address those, but found that the record did not contain "proof that the claimant will be unable to perform light work for a continuous period of 12 months as a result of her vascular disease and resulting treatment," noting also that "reports of post-hospital follow-up examinations indicate that the claimant is making a reasonable recovery." AT 26.  As was discussed above, the follow-up medical treatment evidence substantiates that the December 2020 surgery resolved plaintiff's left leg symptoms, as does her own testimony at the hearing.  There is therefore no basis to disturb the ALJ's finding that plaintiff's later-developing vascular impairments would not undermine the opinions of the other physicians who found that plaintiff was capable of performing a range of light work, as it is clear the reported symptoms in her left leg related to those impairments resolved quickly following surgery in December of 2020.  Nor does the medical treatment evidence substantiate plaintiff's reports of severe or frequent dizziness related to uncontrolled blood pressure; to the contrary, as was discussed, records from later 2020 reflect that plaintiff's blood pressure was responding to compliance with her medication and there are no significant reports of dizziness to her treatment providers.  Because exacerbations of uncontrolled hypertension and plaintiff's vascular

23

symptoms were fairly short-lived, I find that the development of those impairments is insufficient to render the opinions in this case unreliable or stale.

Plaintiff lastly argues, in a vague manner, that the ALJ should have obtained an opinion from a treating source rather than relying on the available medical evidence.  Dkt. No. 9, at 26.  This argument is flawed for two reasons.  Initially, as was already discussed above, I disagree with plaintiff that the other opinions in the record were stale, and the ALJ was entitled to rely upon them, particularly as plaintiff has not seemingly leveled any specific challenge to the ALJ's reasons for relying on or rejecting portions of those opinions.[8]  Moreover, the ALJ was under no duty to obtain an opinion from a treating source before rendering his decision because not only did he have opinion evidence from other sources to rely upon, but he also appropriately considered all of the medical evidence in the record as he was entitled to do, an action which was not, as plaintiff asserts in a conclusory manner, an inappropriate interpretation of raw medical data. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017)

---

[8]     Plaintiff points out that the ALJ did not account for the postural-type limitations opined by Dr. Figueroa, but does not provide any clear argument as to why the reasons the ALJ provided for explicitly rejecting those limitations was erroneous.  Dkt. No. 9, at 25.

(finding the ALJ was not required to rely on a treating physician's opinion because that source's own contemporaneous treatment records provided relevant information from which the ALJ could formulate the RFC finding) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). I note, moreover, that it was plaintiff's burden in the first instance to establish the existence of an impairment that would preclude the performance of her past relevant work. *See Glessing v. Comm'r of Soc. Sec. Admin.*, 725 F. App'x 48, 49 (2d Cir. 2018) ("The claimant has the burden to show an inability to return to her previous specific job and inability to perform her past relevant work generally.").

Because the ALJ could appropriately rely on the opinions in the record and inasmuch the ALJ's reliance on those opinions is supported by substantial evidence, I find that the ALJ has not committed any error that would necessitate remand.

IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 15) is GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is DENIED, the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      March 24, 2023
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge

26